UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

WILLIAM ELDRIDGE PAXTON,

                Plaintiff,

       v.

IDAHO DEPARTMENT OF
CORRECTION, CORPORAL
SHILLING,[1] WARDEN BLADES, and
CORIZON MEDICAL,

                Defendants.

Case No. 1:12-cv-00136-REB

**MEMORANDUM DECISION AND
ORDER**

       Plaintiff is proceeding in this prisoner civil rights case against only Corporal

Schillings. Pending before the Court are Plaintiff's Second Discovery Request (Dkt. 28),

Defendant's Motion for Extension of Time to File Reply (Dkt. 29), Plaintiff's Motion for

Extension of Time on Discovery (Dkt. 33), and Defendant's Motion for Summary

Judgment (Dkt. 37). Both parties that have appeared have consented to the jurisdiction of

a United States Magistrate Judge to enter final orders in this case. (Dkt. 23.) *See* 28

U.S.C. § 636(c) and Fed. R. Civ. P. 73.

---

[1] The correct spelling of Corporal Shilling's name is Schillings.

**MEMORANDUM DECISION AND ORDER - 1**

After reviewing the parties' arguments and exhibits, and the record in this matter, the Court concludes that oral argument is unnecessary. Accordingly, the Court enters the following Order granting in part and denying in part the Motion for Summary Judgment and addressing the parties' other motions.

## BACKGROUND

Plaintiff's pleadings in this matter have been difficult to decipher. (Dkt. 3, 9.) Plaintiff is an 80-year-old inmate who suffers from diabetes, chronic back pain, peptic ulcer disease, and Reynaud's Phenomenon.[2]  He is housed in the Medical Annex at the Idaho State Correctional Institution (ISCI). (Dkt. 3, p. 2.) Plaintiff was permitted to proceed on a limited conditions of confinement claim asserted in his Amended Complaint (Dkt. 9), based on the following allegations: (1) that the temperatures within the Medical Annex on winter days when the windows and doors were open are essentially the same as the outside temperatures, which on at least one occasion was no more than 39 degrees; (2) that Plaintiff was not given adequate winter clothing to counter the chill caused by open windows and doors, despite his requests; and (3) that exposure to cold temperatures during the winter of 2012 resulted in a blood clot and loss of vision in Plaintiff's left eye. (Dkt. 11, p. 3.)

Although Plaintiff named Warden Randy Blades and Corporal Schillings in the Amended Complaint, the Court permitted Plaintiff to proceed against only Corporal

---

[2] Reynaud's Phenomenon is the constriction of blood vessels and lack of blood to the hands and feet, causing coldness and sometimes more severe problems related to lack of blood flow. (Cardona Aff. & Exhibits, Dkt. 37-3.)

**MEMORANDUM DECISION AND ORDER - 2**

Schillings on the claim for violations that occurred in the winter of 2012. In addition, the Court did not permit Plaintiff to proceed on claims that the windows in the handicap shower area were left open in the winter, letting cold air blow onto inmates who were showering, or on a variety of other conditions of confinement claims too vague to state viable claims. After Plaintiff was given an opportunity to amend, the Court dismissed all of the claims against all Defendants without prejudice except those stated above against Corporal Schillings, upon which Plaintiff was permitted to proceed.

In his Amended Complaint, Plaintiff seeks nominal, compensatory, and punitive damages, as well as any other appropriate relief.

On January 4, 2013, Defendant filed a Motion to Dismiss for Failure to Exhaust Administrative Remedies. (Dkt. 19.) The motion was denied. (Dkt. 24.) The discovery deadline was set for October 31, 2013, with the summary judgment motion deadline set for December 31, 2013. Rather than file an answer, Defendant Schillings filed a Motion for Summary Judgment on December 17, that is now fully briefed. (Dkt. 37.) *See* Fed. R. Civ. P. 56(b) (motion for summary judgment may be filed at any time within limits set by Court).

## MOTION FOR SUMMARY JUDGMENT

### 1.    Standard of Law

Summary judgment is appropriate where a party can show that, as to any claim or defense, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). One of the principal purposes of the

**MEMORANDUM DECISION AND ORDER - 3**

summary judgment rule "is to isolate and dispose of factually unsupported claims . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). It is "not a disfavored procedural shortcut," but is instead the "principal tool[] by which factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources." *Id.* at 327.

"[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The requirement is that there be no *genuine* dispute as to any *material* fact. Material facts are those "that might affect the outcome of the suit." *Id.* at 248. Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment. *Id.*

 The moving party is entitled to summary judgment if that party shows that each material fact cannot be disputed. To show that the material facts are not in dispute, a party may cite to particular parts of materials in the record, or show that the adverse party is unable to produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1)(A) & (B). The Court must consider "the cited materials," but it may also consider "other materials in the record." Fed. R. Civ. P. 56(c)(3).

If the moving party meets its initial responsibility, then the burden shifts to the opposing party to establish that a genuine dispute as to any material fact actually does exist. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The existence of a scintilla of evidence in support of the non-moving party's position is

**MEMORANDUM DECISION AND ORDER - 4**

insufficient. Rather, "there must be evidence on which the jury could reasonably find for the [non-moving party]." *Liberty Lobby*, 477 U.S. at 252.

Material used to support or dispute a fact must be "presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). Affidavits or declarations submitted in support of or in opposition to a motion "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). If a party "fails to properly support an assertion of fact or fails to properly address another party's assertion of fact," the Court may consider that fact to be undisputed. Fed. R. Civ. P. 56(e)(2). The Court may grant summary judgment for the moving party "if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it." Fed. R. Civ. P. 56(e)(3).

The Court does not determine the credibility of affiants or weigh the evidence of the non-moving party. Although all reasonable inferences which can be drawn from the evidence must be drawn in a light most favorable to the non-moving party, the Court is not required to adopt unreasonable inferences from circumstantial evidence, *McLaughlin v. Liu*, 849 F.2d 1205, 1208 (9th Cir. 1988).

To state a claim under § 1983, a plaintiff must allege a violation of rights protected by the Constitution or created by federal statute proximately caused by conduct of a person acting under color of state law. *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991).

**MEMORANDUM DECISION AND ORDER - 5**

Where conditions of confinement are challenged under the Eighth Amendment's Cruel and Unusual Punishment Clause, a plaintiff must make two showings. First, the plaintiff must make an "objective" showing that the deprivation was "sufficiently serious" to form the basis for an Eighth Amendment violation. *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000).

Second, the plaintiff must make a "subjective" showing that the prison official acted "with a sufficiently culpable state of mind." *Id*. To violate the Eighth Amendment a prison official must act in a manner that amounts to "deliberate indifference," which is "more than ordinary lack of due care for the prisoner's interests or safety," but "something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer*, 511 U.S. at 835.

 Stated another way, deliberate indifference exists when an "official knows of and [recklessly] disregards an excessive risk to inmate health or safety," which means that he or she "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 838. To rebut the subjective inquiry, prison officials may present  evidence that they reasonably responded to the risk. *Farmer*, 511 U.S. at 844–45.  Mere negligence is not sufficient to establish deliberate indifference; rather, the official's conduct must have been wanton. *Id*. at 835.

A prisoner must be confined under conditions that do not violate the Eighth Amendment. *See Farmer*, 511 U.S. at 832; *Johnson*, 217 F.3d at 731. The Eighth

**MEMORANDUM DECISION AND ORDER - 6**

Amendment "embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency." *Estelle v. Gamble,* 429 U.S. 97, 102 (1976). While conditions of confinement may be harsh and uncomfortable without being a violation of the Eighth Amendment, they cross the line of acceptability when they (1) involve "the wanton and unnecessary infliction of pain," (2) are "grossly disproportionate to the severity of the crime warranting imprisonment," (3) result "in unquestioned and serious deprivation of basic human needs, or (4) deny an inmate "the minimal civilized measure of life's necessities." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). "The circumstances, nature, and duration of a deprivation of these necessities must be considered in determining whether a constitutional violation has occurred." *Johnson*, 217 F.3d at 731.

The "minimal civilized measure of life's necessities" includes adequate shelter. *Rhodes*, 452 U.S. at 347. Under the Eighth Amendment, inmates have a right to protection from extremely cold indoor temperatures. *Antonelli v. Sheahan*, 81 F.3d 1422, 1433 (7th Cir.1996). Cold temperatures in a prison cell need not imminently threaten an inmate's health to violate the Eighth Amendment. *Dixon v. Godinez*, 114 F.3d 640, 644 (7th Cir. 1997) ("Viewing the record in Dixon's favor, it appears that a material dispute remains as to whether the prison's standard-issue clothing and bedding provided Dixon with the constitutionally necessary minimum protection against severe cold, particularly for daytime activities. That precludes summary judgment on this issue.").

In addition, continued exposure to short periods of unreasonably cold temperatures can violate the Eighth Amendment. In *Del Rarine v. Williford*, 32 F.3d 1024, 1050-51

**MEMORANDUM DECISION AND ORDER - 7**

(7th Cir. 1994), the court held that a prisoner could proceed on his claim that he was routinely placed in a cell with unreasonably low temperatures and without adequate clothing while he waited to be strip-searched. That inmate alleged:

> Every few days I'm striped (sic) searched in my cell (notwithstanding the bitter cold resulting from the open window above my cell), cuffed behind my back, pulled backwards from my cell, put in an empty cell while cuffed, from fifteen to thirty minutes, ... This practice continues to the present time. On December 23, 1983 while the chill factor was minus 40 degrees to 50 degrees below zero, according to the radio weather reports, I was strip searched and placed in an empty cell ... No hats, jackets, or gloves were allowed, nor could we put a blanket over our cell bars to warm the cell. Many other days were also bitterly cold. Repeated requests to Unit Manager Deer, Associate Warden Keohane, and Warden Miller to close the windows and fix broken ones were futile.

*Id.* at 1050.

## 2.    Undisputed Material Facts

This section includes facts that are undisputed and material to the resolution of the issues in this case. Where material facts are in dispute, the Court has included Plaintiff's version of facts, insofar as that version is not contradicted by clear documentary evidence in the record.

Defendant Corporal Schillings worked the swing-shift in the Medical Annex, where the most vulnerable inmates are housed, including those with serious illnesses and those of advanced age. Plaintiff describes the building as follows:

> The Medical Annex Unit is a cigar shaped building, open bay room 220 feet long and 72 feet wide with 26 foot by 4 foot windows on the North end and 2 sets of double doors on the south end with 3 each 6 foot by 4 foot windows. When the rear windows and front doors are opened it is like a wind [tunnel] with the heat pump in a separate room.

**MEMORANDUM DECISION AND ORDER - 8**

(Dkt. 7, p. 1.)

In February and March of 2012, Schillings regularly opened both doors and windows or allowed inmates to open them to air out the unit. Plaintiff alleges that this practice is ongoing, including the opening of windows in the handicap shower units while elderly inmates shower.

Plaintiff states that he and other inmates complained to Corporal Schillings and to correctional officers under him that it was cold and some of them did not have winter clothing and sufficient body fat to keep them warm. (Dkt. 18, p. 2.) Plaintiff states that Inmate Jones complained to Schillings about the cold air from the window on December 2, 2012, and Schillings did not close the window. (*Id*., p. 3.)

 Plaintiff alleges that "[i]nmates grow old[,] have poor circulation and cannot stand these cold temperatures." (*Id*., p. 4.) He further alleges that he suffers from diabetes, chronic back pain, peptic ulcer disease, and Reynaud's Phenomenon. Plaintiff believes that the regular exposure to extreme cold in the Medical Annex is a constitutional violation and exacerbated his medical conditions, resulting in partial loss of sight.

Defendant has submitted the expert medical opinion of Joseph Cardona, R.N., who declares under oath that there is no medical evidence or medical research to support the contention that Reynaud's is connected to any problems other than hand and foot problems, and that there is particularly no evidence to suggest a connection of Reynaud's to loss of vision. (Cardona Aff. & Exhibits, Dkt. 37-3.) Nurse Cardona provides records from Plaintiff's visit to a retinal specialist, who drew no causal connection between the

**MEMORANDUM DECISION AND ORDER - 9**

loss of vision and Plaintiff's exposure to cold temperatures. (*Id*.)

Plaintiff grieved the issue of the handicap shower windows being opened during showering on June 16, 2009. On June 20, and 22, 2011, Plaintiff notified prison officials that the windows were once again being opened. On July 12, 2011, a prison official responded that the air conditioning system needed to be repaired, that it was subsequently repaired, and that "the windows are now closed all the time." ( Dkt. 21-2, p. 16.) Despite this response, the shower windows are regularly opened during showering.

When Plaintiff submitted a grievance complaining of cold air on January 4, 2012, Sergeant Ultis checked temperatures on January 10, 2012, at which time the temperature showed between 70 and 73 degrees. Plaintiff was offered an opportunity to move to a bunk that was not as close to the front doors, which Plaintiff declined. (Ultis Aff., Dkt. 37-1, p. 2.) Plaintiff alleges that the single temperature reading measured by Sergeant Ultis was not taken when the doors and windows were open. (Dkt. 39, p. 9.) Sergeant Ultis states in the grievance response that he informed staff that, if they continued to air out the unit, they had to make sure the temperatures did not drop in the process. (*Id*.)

Plaintiff's Complaint details the following dates he was subjected to cold drafts of outdoor air from open windows and doors in the Medical Annex:

January 15, 2012     Doors blocked open.

January 24, 2012     Doors blocked open.

February 1, 2012     Doors blocked open.

February 2, 2012     Windows and doors blocked open.

**MEMORANDUM DECISION AND ORDER - 10**

February 3, 2012      Doors blocked open.

February 4, 2012      Doors blocked open.

(Complaint, Dkt. 3; *see also* Dkt. 3-1 (providing a different list of dates.))

This log, with similar entries, continues through March 9, 2012, when Plaintiff alleges that he spoke to an unnamed deputy warden about the conditions. (Dkt. 3, p. 3.) Also, on February 24, 2012, Grievance Coordinator Jill Whittington rejected a second grievance from Plaintiff on the temperature issues because he had already grieved the issue in January 2012. (Dkt 3, p. 4.)

Both parties have submitted evidence outside of the time period of February and March 2012 (the time period specified in the Complaint regarding the allegations against Corporal Schillings). Prison officials electronically monitored the temperature in the Medical Annex from October 29, 2013, through December 2, 2013. (Christensen Aff., Dkt. 37-2, p. 2.) The ambient air temperature during that period of tine ranged between 71 and 75 degrees. (*Id.*)  No other written inmate complaints about continuously cold temperatures in the Medical Annex have been received by Deputy Warden of Security Jay Christensen. (Christensen Aff., Dkt. 37-2, p. 2.)

As in the winter of 2012, Plaintiff again kept logs of daily exposure to cold in the medical unit during 2013, of which the following is a sample:

November 1, 2013       Windows open in dayroom. (35 to 56 degrees outside)

November 2, 2013       Front doors blocked open at noon. (42 to 59 degrees
                       outside)

**MEMORANDUM DECISION AND ORDER - 11**

| | |
|---|---|
| November 9, 2013 | Window open. (36-54 degrees outside) |
| November 18, 2013 | Windows open by showers. (34 to 52 degrees outside) |
| November 20, 2013 | Plaintiff filed a grievance about the windows being open during use of the handicap showers on November 18, 2013 at noon, when it was 44 degrees outside. On the same day, the doors were blocked open by the sergeant on duty. (38 to 42 degrees outside) (Dkt. 39, p. 15.) |
| November 22, 2013 | Window was jammed opened, and Correctional Officer Lund tried to tape it closed. (22 to 36 degrees outside) |
| November 28, 2013 | Plaintiff filed an offender concern form (kite) with Warden Blades, complaining that the windows near the handicap showers were open at 9:30 a.m. during showering time, when the temperature outside was less than 40 degrees. Blades said that the kite would be forwarded to the unit sergeant. (Dkt. 39, p. 14.) |
| December 10, 2013 | Doors open from 8 to 10 p.m. (5 to 19 degrees outside) |
| December 15, 16, 2013 | Officers requested that maintenance raise the temperatures in the unit; officers had to wear their coats to work in the unit. |

**3.**     **Discussion of Claims Against Corporal Schillings arising from February and March 2012**

To prevail in the face of a summary judgment motion and proceed to trial, Plaintiff

must show that he has sufficient facts upon which a factfinder could find that he can meet

the elements of his claim, including both the objective and the subjective prongs of the

deliberate indifference standard of law.

**MEMORANDUM DECISION AND ORDER - 12**

**A.      *Objective Prong***

Defendant argues that a brief exposure to cold air, even if uncomfortable, does not meet the objective component of an Eighth Amendment claim. Plaintiff counters by offering a section from *Adult Correctional Institutions, Fourth Edition*, on recommended prison living conditions that provides: "Temperature and humidity should be capable of being mechanically raised or lowered to an acceptable comfort level." (Dkt. 39, p. 18.) In reply, Defendant has produced evidence that "the HVAC unit in the medical annex is capable of creating a continuous temperature read out that can be retrieved by a technician. During that time the ambient air temperature inside the medical annex ranged between 71 and 75 degrees." (Christensen Aff., p. 2.)[3]

However, Defendant offers no information about whether the cold breezes blow near the HVAC unit. The cold breezes may blow on Plaintiff, but not on or near the thermostat, and the windows and doors may be closed before the ambient temperature near the thermostat descends below 71 degrees.

Plaintiff was offered a different bed, away from the front doors, to minimize his exposure to extremely cold air coming into the unit. Plaintiff declined the offer to move to a back bunk. Plaintiff, however, says that the same conditions exist in the front and back of the building, because both the doors and the windows are opened regularly. There is no evidence in the record that prison officials offered Plaintiff gloves, a hat, or other warm

---

[3] Plaintiff disputes these electronic readings as fraudulent, but he offers no evidence to support his contention. Therefore, this allegation does not create a "genuine dispute of material fact."

**MEMORANDUM DECISION AND ORDER - 13**

clothing, during time periods when the doors and windows are opened in the winter.

An allegation of inadequate living temperature may amount to a constitutional violation, but key to that determination are the factors of the severity of the temperature, its duration, and whether the inmate has adequate alternatives to protect himself from the cold. *See  Dixon v. Godinez*, 114 F.3d at 644; *Wilson v. Seiter*, 501 U.S. 294, 304 (1991) (noting that "a low cell temperature at night combined with a failure to issue blankets" may establish an Eighth Amendment violation). Here, an 80-year-old frail man with significant health problems alleges that he is subjected to freezing cold winter breezes blowing on him for several hours nearly every day, and that he has not been offered winter clothing or a place of refuge from the cold during that time period. While it is possible that the heater continues to warm the entire area to remain in the 70s, it is impossible to instantaneously warm freezing cold air coming into a building. In other words, few people would find it acceptable to sit in a warm room with a cold wind blowing on them for several hours a day.

In considering whether Plaintiff's deprivation was "sufficiently serious," the Court particularly has considered whether consistent exposure to drafts of cold outside air during periods of time when the weather is at or near the freezing level accords with society's standards of decency regarding treatment of geriatric patients in a medical housing unit, who may be more sensitive to cold weather conditions because of advanced age. *See* Brown, Lyle B., *The Joint Effort to Supervise and Treat Elderly Offenders: A New Solution to a Current Corrections Problem,* 59 Ohio St. L. J. 259, 270 (1998)

**MEMORANDUM DECISION AND ORDER - 14**

("Prisons were, and still are, designed primarily for a younger population. As a result, uncomfortable temperatures . . . provide an inhospitable environment for many aged."). The Court concludes that Plaintiff's allegations raise a genuine dispute regarding whether such conditions violate the Eighth Amendment.

As to Plaintiff's claims of physical injury, he has provided no evidence showing that his loss of sight was causally connected to his exposure to cold drafts from open doors and windows. The retinal specialist did not draw a connection in the medical records provided, and Plaintiff does not have the medical training to draw such a connection. As a result, Plaintiff has not met the objective prong of this test on this aspect of his claim, but only on whether he endures wanton and unnecessary suffering while being housed near open windows when the temperatures are near freezing outside.

### B.     *Subjective Prong*

Currently, the only Defendant against whom Plaintiff is authorized to proceed is Corporal Schillings. Plaintiff's Statement, attached to his Amended Complaint, explains his cause of action against Corporal Schillings: "I have Reynaud's disease and peptic ulcer disease and in the Spring of 2012 Officer Shillings [sic] Inmate Gillespie #80145 opened the windows and doors to the Medical Annex claiming it needed to be aiired [sic] out during freezing wether [sic] for hours at a time without turning up the heat to compensate for the cold even though many inmates complained about the cold." (Dkt. 9-3, p. 1.)

MEMORANDUM DECISION AND ORDER - 15

Plaintiff states that he and other inmates complained to Schillings and officers under him that it was cold and some of them did not have winter clothing to keep them warm or were thin. (Dkt. 18, p. 2.) He states that Inmate Jones complained to Schillings about the cold air from the window on December 2, 2012, and Schillings did not close the window. (*Id.*, p. 3.) Plaintiff alleges that "[i]nmates grow old[,] have poor circulation and cannot stand these cold temperatures." (*Id.*, p. 4.)

The Court finds that Plaintiff has stated sufficient facts to demonstrate a genuine dispute as to a material fact regarding whether Corporal Schillings regularly ignored elderly inmates' pleas to close the windows and doors because they did not have adequate winter clothing to combat the cold breezes, despite the temperature near the thermostat in the Medical Annex remaining in the 70s. Because a factfinder could find that these allegations, if true, meet the subjective prong of the deliberate indifference test, the Court concludes that Defendant Schillings is not entitled to summary judgment. There is a genuine dispute as to whether Schillings was deliberately indifferent to a circumstance that amounted to inhumane treatment that caused an elderly inmate wanton and unnecessary suffering.

**4.      Qualified Immunity Defense**

Defendant Schillings alternatively argues that he is entitled to qualified immunity. In § 1983 actions, the doctrine of qualified immunity protects state officials from personal liability from paying an award of damages to a plaintiff for on-the-job conduct, so long as the conduct is objectively reasonable and does not violate clearly-established federal

**MEMORANDUM DECISION AND ORDER - 16**

rights. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) (citations omitted). A qualified

immunity analysis consists of two prongs: (1) whether the facts as alleged by plaintiff

establish a violation of a constitutional right, and (2) whether that right was clearly

established given the state of the law at the time of the alleged misconduct. *Pearson v.*

*Callahan*, 555 U.S. 223, 232 (2009), citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001).

Courts may "exercise their sound discretion in deciding which of the two prongs of the

qualified immunity analysis should be addressed first in light of the circumstances in the

particular case at hand." *Id*. at 818. The qualified immunity inquiry is "a pure question of

law." *Elder v. Holloway*, 510 U.S. 510, 514 (1994).

      As to the first prong, the court considers whether, "[t]aken in the light most

favorable to the party asserting the injury, . . . the facts alleged show the [defendants']

conduct violated a constitutional right." *Saucier*, 533 U.S. at 201. As to the second prong,

whether the law was clearly established, such inquiry "must be undertaken in light of the

specific context of the case, not as a broad general proposition." *Id.* at 201. The Court

must consider the "objective legal reasonableness of the action, assessed in light of the

legal rules that were clearly established at the time it was taken." *Pearson*, 555 U.S. at

243 (quoting *Wilson v. Layne*, 526 U.S. 603, 614 (1999)). If the public official can

demonstrate he did not know, nor should he have known the relevant legal standard, then

qualified immunity applies. *Harlow*, 457 U.S. at 819.

      Defendant Schillings argues that he is entitled to qualified immunity because the

law is not clearly established that a correctional officer who did nothing more than open

**MEMORANDUM DECISION AND ORDER - 17**

doors and windows in cold weather to air out a housing unit should be subjected to personal liability. The Court agrees. Temperature readings in the Medical Annex remained in the 70s, notwithstanding the freezing cold breezes that blew through the building for several hours during the regular "airing out" of the building in the winter. In addition, the conditions are unduly harsh only as to some geriatric inmates; other inmates did not complain, but seem to have welcomed, the fresh air. The Court finds no case law that would specifically place Schillings on notice of the alleged constitutional violation. During this time period, prison officials consistently believed and gave orders that –  so long as the overall temperature remained constant –  the windows and doors could be opened. The Court found no cases from the United States Court of Appeals for the Ninth Circuit particularly dealing with the effect of cold upon elderly inmates. Rather, how the prisons can accommodate the needs of a growing number of geriatric inmates appears to be a seldom-addressed topic.

Accordingly, because there was no clearly established law at the time of the alleged incidents that would have put Officer Schillings on notice that he might have been violating Plaintiff's constitutional rights by opening the doors and windows to air out the Medical Annex and letting in freezing cold air without providing Plaintiff with additional winter clothing for indoors –  despite a relatively warm temperature reading near the building's thermostat  – Officer Schillings is entitled qualified immunity.

**MEMORANDUM DECISION AND ORDER - 18**

## 5.     Amendment Permitted

Plaintiff complains that the cold breezes in the building remain a problem. Because Plaintiff earlier attempted to bring a claim against Warden Blades, but was not permitted to do so, the Court finds it appropriate to allow Plaintiff to file a second amended complaint to proceed against the warden of the facility for injunctive relief. In addition, Plaintiff has provided additional information in his more recent submissions about the shower windows being left open, letting in freezing cold air while elderly inmates shower in the handicap showers.[4] As a result, the Court will also permit Plaintiff to proceed on this part of his claim against the warden. Plaintiff's second amended complaint should contain all of his allegations of drafty windows and doors, including shower windows, related to current conditions in the Medical Annex.

## 6.     Conclusion and Referral to Settlement Conference

Accordingly, the Court will grant Defendant Schillings' Motion for Summary Judgment as to the claim of Plaintiff's loss of vision and the damages claim for inflicting wanton suffering against Corporal Schillings, but the Court will permit Plaintiff to file a second amended complaint to proceed against Warden Blades on the ongoing wanton suffering claim, including the shower window claim, as to injunctive relief only (an order

---

[4] On November 28, 2013, Plaintiff filed an offender concern form with Warden Blades, complaining that the windows near the handicap showers were open at 9:30 a.m. during showering time, when the temperature outside was less than 40 degrees. (Dkt. 39, p. 14.) Plaintiff alleges that the 3-foot by 4-foot windows by the handicap showers were open all morning on December 23, 2013. (Dkt. 30, p. 21.) He alleges; "It's hard for me to shower even in the handicap showers because of the temperature kept by Officers in here." (Dkt. 18, p. 4.) "It is also hell to shower with the windows open and 20 to 30 mph wind blowing on you[;] this is inhumane treatment." (Dkt. 7, p. 2.)

to do or to stop doing something).[5] Because the warden has not had an opportunity to respond to Plaintiff's claim that the conditions are ongoing and he should be afforded injunctive relief, the Court will permit the parties to select one of following paths.

One alternative is for the parties to meet together before a second amended complaint is filed and attempt to settle this case between themselves regarding (1) how to address temperature variations affecting Plaintiff during times when the building is aired out in the winter, for example, by providing him with additional winter clothing to wear indoors, and/or providing him with a bed in the rear of the building and not opening the back windows at all; (2) how to determine a schedule for airing out the handicap shower area other than when elderly inmates are showering; and/or (3) any other set of terms acceptable to both parties.[6] At the end of 90 days, the parties may file a stipulation to request a supervised settlement conference if they have not been able to work out a solution between them and they wish to continue negotiations.

Another alternative is for Plaintiff to file a second amended complaint to state the ongoing conditions, and for the warden to respond to the second amended complaint regarding injunctive relief. The parties then may engage in any additional discovery, and the case will be set for a bench trial on the claims for injunctive relief.

---

[5] Damages against the warden would be barred by qualified immunity for the same reasons set forth above regarding Defendant Schillings.

[6] These are examples only of what the parties may wish to consider in negotiations, not court orders.

**MEMORANDUM DECISION AND ORDER - 20**

## REVIEW OF OTHER PENDING MOTIONS

Plaintiff has filed an extension of time because he has requested issuance of subpoenas duces tecum for six inmates. (Dkt. 33.) However, subpoenas duces tecum are for trial testimony; therefore, the motion and requests are premature. Plaintiff may file a motion for issuance of subpoenas duces tecum should a trial in this matter be set.

Plaintiff filed a "Reply to Defendant Response; Plaintiff's Second Discovery Request; Motion for Summary Judgement" (Dkt. 28) and an "Extraordinary Motion for Review of Misconduct" (Dkt. 42).The basis for Plaintiff's motions is that he believes prison officials have been untruthful about the facts in their responses to discovery requests and that he believes prison officials falsified the electronic temperature readings. However, if material facts are in dispute, as they are in this case, summary judgment is inappropriate.

Plaintiff asserts that Defendant should be compelled to produce daily unit logs that show when actions such as turning off window alarms, opening doors and windows, and other actions are listed. Plaintiff alleges that Defendant has failed to provide a full copy of Policy 303.02.001.003.

The Court concludes that, if logs are kept of such actions, they should be provided to Plaintiff. If the provision of such logs to Plaintiff poses a security issue, the logs should be provided to the Court in camera. If a full copy of Policy 303.02.001.003 has not been provided to Plaintiff, and it is relevant to Plaintiff's causes of action as stated in the pleadings, the warden should provide the entirety of the Policy to the Plaintiff.

**MEMORANDUM DECISION AND ORDER - 21**

# ORDER

**IT IS ORDERED:**

1.    Plaintiff's "Reply to Defendant Response; Plaintiff's Second Discovery Request; Motion for Summary Judgement" (Dkt. 28) is DENIED in part as to his summary judgment request, and GRANTED in part as to his request for discovery, as noted in the limited fashion above, to be provided within 30 days after a second amended complaint is filed.

2.    Plaintiff's Motion for Extension of Time for Discovery (Dkt. 33) is DENIED as moot, to the extent it is a premature request for issuance of trial subpoenas.

3.    Defendant's Motion for Extension of Time to file Reply to Plaintiff's Second Discovery Request and Motion for Summary Judgment (Dkt. 29) is GRANTED. The Reply (Dkt. 31) is considered timely filed.

3.    Defendant's Motion for Summary Judgment (Dkt. 37) is GRANTED in part as to the claim of Plaintiff's loss of vision and all claims against Corporal Schillings, and DENIED as to Plaintiff's claim for injunctive relief against Warden Blades for allegedly maintaining constitutionally inadequate living conditions resulting from cold drafts from open doors and windows, including in the handicap shower areas during times of showering.

4.    The parties shall notify the Court within 30 days whether they wish to proceed with settlement negotiations or litigation (both regarding injunctive

relief only).

5.     The second amended complaint shall be due within 30 days of the earliest

of termination of unsuccessful settlement negotiations or notice that the

parties wish to proceed with litigation. If the case is settled, neither a second

amended complaint nor an answer will be required.

DATED:  **January 31, 2014**

Honorable Ronald E. Bush
U. S. Magistrate Judge